**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                            :
IN RE: NEVSUN RESOURCES LTD.                  :     Civil Action No. 12 Civ. 1845 (PGG)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF (1) PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND (2) PLAN OF
ALLOCATION OF SETTLEMENT PROCEEDS**

**KAPLAN FOX & KILSHEIMER LLP**          **RIGRODSKY & LONG, P.A.**
Robert N. Kaplan                                          Seth D. Rigrodsky
Frederic S. Fox                                              Timothy J. MacFall
Jeffrey P. Campisi                                          825 East Gate Boulevard, Suite 200
850 Third Avenue, 14th Floor                      Garden City, New York 11530
New York, New York 10022                        Tel: (516) 683-3516
Tel:  (212) 687-1980
Fax:  (212) 687-7714

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

December 24, 2014

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

        A.      Procedural History ........................................................................................ 3

        B.      The Settlement .............................................................................................. 5

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL ................................................. 6

        A.      The Settlement Negotiations Demonstrate Procedural Fairness ............................ 7

        B.      Application of the *Grinnell* Factors Supports Approval of the Settlement............ 8

                1.      The Complexity, Expense and Likely Duration of the Litigation
                        Support Approval of the Settlement ........................................................ 8

                2.      The Stage of the Proceedings and Amount of Discovery Support
                        the Settlement .......................................................................................... 10

                3.      The Risks of Establishing Liability and Damages Support the
                        Settlement ............................................................................................... 10

                4.      The Inability of Defendants to Withstand a Greater Judgment
                        Supports the Settlement ........................................................................... 12

                5.      The Range of Reasonableness of the Settlement Fund Supports the
                        Settlement ............................................................................................... 12

                6.      The Reaction of the Class Supports the Settlement ................................... 14

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE............ 15

V.      NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23
        AND DUE PROCESS .................................................................................................. 17

VI.     CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981) ........................................................................................... 10

*Chatelain v. Prudential-Bache Sec., Inc.,*
805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................. 8, 10

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) .......................................................................... 8, 12

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) ............................................................................. 7, 8

*Hicks v. Morgan Stanley,*
No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................ 7

*In re Am. Bank Note Holographics,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................... 12, 15

*In re AOL Time Warner, Inc.,*
02-cv-5575, 2006 WL 903236 (Apr. 6, 2006) ...................................................... 14

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................. 11

*In re Blech Sec. Litig.,*
No. 94-cv-7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002)............................... 11

*In re Chambers Dev. Sec. Litig.,*
912 F. Supp. 822 (W.D. Pa. 1995) ..................................................................... 14

*In re China Sunergy Sec. Litig.,*
07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)................. 7, 10

*In re Computron Software,*
6 F. Supp. 2d 313 (D.N.J. 1998)........................................................................ 15

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004)................................................................... passim

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
194 F.R.D. 166 (E.D. Pa. 2000) ......................................................................... 15

*In re Lloyd's Am. Trust Fund Litig.,*
96 Civ. 1262 (RSW), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................... 11

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 18

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................... 7, 15, 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 7

*In re NASDAQ Market-Makers Antitrust Litig*.,
  No. 94-cv-3996, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) .................................. 15

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997) ............................................................... 7, 13, 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996) .......................................................................... 18

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................ 9

*In re Top Tankers, Inc. Sec. Litig.*,
  06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) ....... 15

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .................. 7

*Malchman v. Davis*,
  706 F.2d 426 (2d Cir. 1983) ................................................................................... 7

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 9, 15

*Pollio v. MF Global, Ltd.*,
  608 F. Supp. 2d 564 (S.D.N.Y. 2009) ..................................................................... 9

*Silberblatt v. Morgan Stanley*,
  524 F. Supp. 2d 425 (S.D.N.Y. 2007) ................................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................ 6, 7, 13, 18

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1983) ................................................................................... 10

*Weseley v. Spear, Leeds & Kellogg*,
  711 F. Supp. 713 (E.D.N.Y. 1989) .......................................................................... 9

*White v. First Am. Registry, Inc.*,
   04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ............................................. 8

**Rules & Statutes**

15 U.S.C. § 78u-4(b)(1)-(2) ......................................................................................................... 3

Fed. R. Civ. P. 23(e)(2) ............................................................................................................... 6

Fed. R. Civ. P. 26(f) .................................................................................................................... 4

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Craig F. Piazza and plaintiff Scott F. Colebourne ("Plaintiffs"), submit this memorandum of law in support of final approval of the proposed Settlement[1] that will resolve the claims asserted in the above captioned securities class action on behalf of purchasers of Nevsun common stock on the New York Stock Exchange or any other U.S. trading platform for the period beginning March 28, 2011 and through February 6, 2012, inclusive (the "Class Period"), and approval of the Plan of Allocation of settlement proceeds.

## I.   **PRELIMINARY STATEMENT**

The proposed Settlement provides recovery for the Class in the amount of $5,995,000 in cash plus interest.   It will completely resolve all claims against all defendants – Nevsun Resources, Ltd. ("Nevsun" or the "Company"), Clifford T. Davis, Peter J. Hardie and Scott Trebilcock (collectively, the "Defendants").

The Settlement is an excellent result as it represents a recovery of approximately 17% of best-case estimated damages. Plaintiffs obtained this result despite facing significant risks in prosecuting this Action.[2]   The Settlement was reached only after prolonged, arm's-length settlement negotiations over approximately six months – including two in-person mediation sessions and additional negotiations – facilitated by Jonathan Marks, and retired former Federal

---

[1] The defined terms herein are those contained in the Stipulation of Settlement dated May 1, 2014 (ECF. No. 39) ("Stipulation of Settlement").

[2] *See* Declaration of Jeffrey P. Campisi in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, Co-Lead Counsel's Application for an Award of Attorney's Fees and Reimbursement of Litigation Expenses, and Lead Plaintiff's Request for an Award of Reasonable Costs and Expenses, dated December 24, 2014 ("Campisi Declaration" or "Campisi Decl."), ¶¶ 5, 83-84.

Judge Layn R. Phillips, both experienced and highly respected mediators.  By the time the Settlement was reached, Plaintiffs had:  (1) conducted an extensive factual investigation which included, among other things, identifying and interviewing former Nevsun and Bisha Mine employees; (2) filed a consolidated Complaint; (3) successfully opposed Defendants' motions to dismiss; (4) consulted with various economic and industry experts; and (5) participated in two-in person mediations and conducted settlement negotiations for approximately six months.  Campisi Decl. ¶¶ 6, 25-48.  As a result, Plaintiffs and Co-Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.  *Id.*

On October 6, 2014, the Court granted preliminary approval of the Settlement and certified a class for settlement purposes. (ECF No. 45).  Since October 24, 2014, the Claims Administrator has disseminated approximately 12,000 copies of the Notice and Proof of Claim (the "Notice Packet").[3]

As ordered by the Court and stated in the Notice, any objections to the Settlement or the Plan of Allocation are due by January 2, 2015, and requests for exclusion from the Class are due to be received no later than December 25, 2014.  To date, no Class Member has filed any objection to the Settlement or the Plan of Allocation, and there have been no requests for exclusion from the Settlement Class.

---

[3] *See* Exhibit 1 to the Campisi Declaration, Affidavit of Jose C. Fraga Regarding [(A)] Mailing of the Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Hearing, (III) Motion for Attorneys' Fees, and Reimbursement of Litigation Expenses, and (IV) Motion for Lead Plaintiff's Award of Reasonable Costs and Expenses (B) Publication of the Summary Notice, and (C) Requests for Exclusion and Objections Received to Date, dated December 17, 2014, ¶¶ 7-10.

Plaintiffs respectfully request that: 1) the proposed Settlement be approved as fair, reasonable and adequate; and 2) that the Plan of Allocation be approved.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

Beginning on or about March 13, 2012, two putative class action complaints were filed against Defendants in the United States District Court for the Southern District of New York, alleging violations of the federal securities laws.  Campisi Decl. ¶¶ 20-21.  Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notice to the public was issued setting forth the deadline by which potential class members could move the Court to be appointed to act as lead plaintiff.  *Id.*  By Order dated June 28, 2012, the Court consolidated the related actions, appointed Craig F. Piazza as the lead plaintiff, and Kaplan Fox & Kilsheimer ("Kaplan Fox") and Rigrodsky & Long, P.A. ("Rigrodsky & Long") as lead counsel (together, "Co-Lead Counsel").  *Id.* ¶¶ 22-23.

Upon their appointment as Co-Lead Counsel, Kaplan Fox and Rigrodsky & Long undertook a hard-fought prosecution that lasted approximately 2 years until the Settlement was reached.  In preparation for the filing of the Consolidated Amended Class Action Complaint (the "Complaint," ECF No. 18), Co-Lead Counsel engaged in an intensive investigation to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the heightened pleading standards imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(b)(1)-(2) (requiring misleading statements and omissions, and state of mind to be pleaded with particularity). Among other things, Co-Lead Counsel thoroughly reviewed and analyzed publicly available relevant information regarding Nevsun (including, but not limited to, its SEC filings, financial statements, filings with Canadian securities regulators, press releases, reports about the Company in the

media, and analyst reports), consulted with various experts, and located and interviewed several confidential witnesses.  Campisi Decl. ¶¶ 24-25.

On September 20, 2012 Defendants filed their motion to dismiss.  Defendants argued that (i) Plaintiffs failed to allege materially false statements; (ii) that Defendants did not "make" any of the alleged statements; (iii) that the alleged misstatements were not material; and (iv) Plaintiffs failed to sufficiently plead scienter.  Campisi Decl. ¶¶ 26-27

On October 22, 2014, Plaintiffs filed an opposition to Defendants' motions to dismiss, arguing, *inter alia,* that Plaintiffs adequately alleged the false and misleading statements and omissions and that the Plaintiffs' allegations established a strong inference of scienter. Campisi Decl. ¶ 28.   On November 7, 2014, Defendants filed their reply brief.  Campisi Decl. ¶ 29.  In total, the parties' briefing and exhibits comprised of approximately 1,000 pages.  Campisi Decl. ¶ 30.

By Order Dated September 27, 2013, the Court granted in part and denied in part Defendants' motions to dismiss the Complaint.  ECF No. 24, Campisi Decl., Ex. 2.  Once the Court entered its Order sustaining the Complaint, the PSLRA discovery stay was lifted.  Thus, pursuant to Fed. R. Civ. P. 26(f), counsel for the parties met and conferred preliminarily on October 8, 2013.   Campisi Decl. ¶ 32.

Plaintiffs were drafting a case management order and discovery schedule in anticipation of an October 31, 2013 status conference when Defendants asked Plaintiffs to briefly stay the litigation in an effort to resolve it.  Campisi Decl. ¶ 34.  At the request of the parties, the Court agreed to stay the litigation through February 28, 2014 while the parties attempt to settle this action through mediation. (ECF No. 28).  *Id*.

Lead Counsel also worked extensively with experts and consultants at different stages of the case to prepare the Complaint, respond to Defendants' motions to dismiss, and prepare for mediation sessions and additional settlement negotiations.   As detailed in the Campisi Declaration, the expertise and assistance provided by these experts was critical to the prosecution and successful resolution of this litigation.  Campisi Decl. ¶ 25, 83-84, 106-08.

### B.     The Settlement

The terms of the Settlement are set forth in the Stipulation of Settlement filed with the Court on May 12, 2014 (ECF No. 39), and in the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").  *See* Fraga Affidavit, Exhibit A, attached as Exhibit 1 to the Campisi Decl.

The Settlement is the result of intensive, arm's-length and substantive negotiations – including two separate in-person mediation sessions and numerous negotiations that took place over the course of approximately six months.  These settlement discussions were conducted under the auspices of highly respected and experienced mediators, the Honorable Layn Phillips, and separately Jonathan Marks.  Campisi Decl. ¶¶ 35, 44.

The in-person mediation sessions occurred on December 9, 2013 and April 10, 2014. During these mediations, Co-Lead Counsel and counsel for the Defendants presented, among other things, their respective views regarding the merits of the litigation, including the evidence adduced, Defendants' defenses, and issues relating to loss causation and damages.  At the conclusion of the April 10, 2014 session, an agreement in principle was reached that would resolve the claims alleged in the Complaint on behalf of purchasers of Nevsun common stock on the New York Stock Exchange or any other U.S. trading platform.  Campisi Decl. ¶ 47.  Also on

April 10, 2014, the parties negotiated and signed a Memorandum of Understanding that outlined the terms of the proposed settlement. *Id.*

After the parties reached an agreement in principle, they diligently negotiated and prepared the comprehensive documentation necessitated by the Settlement.  Campisi Decl. ¶ 48. During this time, Co-Lead Counsel undertook the process of drafting, discussing and finalizing the exhibits to the Stipulation of Settlement.  Co-Lead Counsel held negotiating sessions with counsel for Defendants in this regard, in addition to working with an expert on the plan for allocating the settlement proceeds.  Campisi Decl. ¶¶ 48, 106.

On May 12, 2014, Plaintiffs moved for preliminary approval of the Settlement, and on October 6, 2014 the Court entered the Preliminary Approval Order.  ECF No. 45.  Thereafter, a cash payment of $5,995,000 was deposited into an interest-bearing escrow account by Nevsun's D&O Insurer.  Campisi Decl. ¶ 3.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be approved by the Court.  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  As a matter of public policy, courts favor the settlement of disputed claims, particularly in complex class actions.[4]

---

[4] *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources. Accordingly, this Court will take into consideration such public policy concerns in exercising its discretion.") (citations omitted).

In ruling on final approval of class settlements, courts examine both the negotiating process leading to the Settlement, and the Settlement's substantive terms. *Wal-Mart*, 396 F.3d at 116; *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("*ML Tyco*"). The Court may presume that a settlement negotiated at arm's-length by experienced counsel is fair and reasonable.[5]

### A.    The Settlement Negotiations Demonstrate Procedural Fairness

The parties here negotiated the Settlement at arm's-length. *See* Campisi Decl. ¶¶ 35-48. The negotiation process was intense and included extensive "give-and-take" among the parties. *Id.* These discussions included two in-person mediations and frequent telephone calls both before and after the mediations. *Id.* Plaintiffs were kept informed throughout the settlement negotiation process, and support the proposed Settlement.

Further, Co-Lead Counsel, who have extensive experience prosecuting complex securities class action litigations, submit that the Settlement is fair, reasonable and adequate. Co-Lead Counsel's opinion is entitled to "great weight." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' ... to the recommendations of counsel, who are most closely acquainted with the facts of the underlying

---

[5] *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws.") (citation omitted); *In re China Sunergy Sec. Litig.,* 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *10-11 (S.D.N.Y. May 13, 2011) (same); *accord In re Global Crossing*, 225 F.R.D. at 461; *Hicks v. Morgan Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

litigation."); *accord Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

> **B.      Application of the *Grinnell* Factors**
> **Supports Approval of the Settlement**

An analysis of the well-established "*Grinnell*" factors which the Second Circuit has held are relevant for considering whether a settlement is fair, reasonable and adequate demonstrate that the Court should grant final approval.  These include the following:

> (a) the complexity, expense and likely duration of the litigation; (b) the stage of the proceedings and the amount of discovery completed; (c) the risks of establishing liability; (d) the risks of establishing damages; (e) the risks of maintaining the class action through trial; (f) the ability of the defendants to withstand a greater judgment; (g) the range of reasonableness of the settlement fund in light of the best possible recovery; (h) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation; and (i) the reaction of the class to the settlement.

*D'Amato*, 236 F.3d at 86 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

"In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *Global Crossing*, 225 F.R.D. at 456 (citation omitted).  Similarly, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another."  *White v. First Am. Registry, Inc.*, 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).

> **1.      The Complexity, Expense and Likely Duration of**
> **the Litigation Support Approval of the Settlement**

This litigation involved multiple complex legal and factual issues.  Campisi Decl. ¶¶ 55-73.  Plaintiffs encountered, and absent the Settlement would have certainly continued to

encounter at summary judgment and at trial, significant risks in proving falsity, materiality, scienter, loss causation and the other necessary elements to establish violations of the securities laws, among other things.  These obstacles are detailed more fully in ¶¶ 53-86 of the Campisi Declaration.

Any one of these defenses may have meant no recovery for the Class.  *See, e.g., Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 575 (S.D.N.Y. 2009) (dismissing securities class action with prejudice for "failure to adequately plead the existence of materially false statements or of scienter").  If not for the Settlement, the claims would have continued to be contested fiercely by the Defendants who have demonstrated a commitment to defend through and beyond trial and are represented by the law firm of Gibson, Dunn & Crutcher, LLP, well-respected and highly capable counsel.  A trial would turn on close questions of evidence and fact.  The costs and duration of motion practice, discovery, trial preparation and trial would likewise substantially increase.  Appeals would likely follow.  Campisi Decl. ¶¶ 75-80.

The proposed $5,995,000 cash Settlement provides a substantial and tangible present recovery, without the attendant further expense, uncertainty and risk of no recovery.  Indeed, class actions "are notoriously complex, protracted, and bitterly fought."[6]  In sum, the complexity, expense and delay of continued litigation would be substantial.  Accordingly, this factor favors approval of the Settlement.

---

[6] *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("[I]n evaluating the settlement of a securities class action, federal courts, ... 'have long recognized that such litigation 'is notably difficult and notoriously uncertain.'") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial.").

2.      **The Stage of the Proceedings and
Amount of Discovery Support the Settlement**

This factor examines the amount of information available about the claims and defenses to ensure that the plaintiff was able to properly evaluate his case and to assess the adequacy of any settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1983); *Chatelain*, 805 F. Supp. at 213-14; *Global Crossing*, 225 F.R.D. at 458 (this requirement "is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them'") (citation omitted). "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Id.; see also China Sunergy*, 2011 U.S. Dist. LEXIS 53007, at *13 (even though formal discovery had not taken place, Lead Counsel had conducted an extensive investigation into the factual and legal underpinnings of the case including, among other things, engaging in an extensive analysis of damages scenarios).

Plaintiffs through Co-Lead Counsel – who litigated the case for approximately 2 years – had a full understanding of the strengths and weaknesses of the claims as well as the difficulties the Class would face in obtaining a favorable jury verdict after a lengthy trial, again even assuming this litigation survived pretrial motion practice. *See* Campisi Dec. ¶¶ 55-86. Having sufficient information to fully evaluate the strengths and weaknesses of the Settlement, Plaintiffs and Co-Lead Counsel submit they have proposed for the Court's approval a favorable Settlement.

3.      **The Risks of Establishing Liability
and Damages Support the Settlement**

In assessing this factor, the Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 (1981), or to "foresee with absolute certainty the outcome of the case." *In re Austrian & German Bank*

*Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459.

At the time the agreement in principle to settle the Action was reached, Plaintiffs and Co-Lead Counsel had a thorough understanding of the strengths and weaknesses of the case. *See* Campisi Dec. ¶¶ 55-86. While Plaintiffs and Co-Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were risks as to whether Plaintiffs would ultimately prevail on the merits on certain issues, including, for example, Defendants' argument that Plaintiffs could not establish falsity, scienter or loss causation. *Id.*

In addition to the risks that Plaintiffs might not succeed on the merits before a jury, there was a very substantial risk that, even if Plaintiffs were to prevail, the Class might not be awarded as much as the Settlement Amount on a judgment, much less more. Indeed, the parties highly disputed the amount of potential damages in this Action. Campisi Decl. ¶ 81.

Even assuming this case survived pretrial motions and Plaintiffs proved liability, the economic and securities law issues pertaining to loss causation and damages would have been both complex and hotly contested, requiring expert testimony on sophisticated methodologies, with uncertain results.[7] The jury could be swayed that damages were caused by factors other than

---

[7] *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RSW), 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The reaction of a jury to such complex expert testimony is highly unpredictable."); *Global Crossing*, 225 F.R.D. at 459; *In re Blech Sec. Litig.*, No. 94-cv-7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) ("establishing damages from the drop in the relevant stock price, would, Plaintiffs claim, have degenerated into a 'battle of the experts' and thus posed a risk to Plaintiffs").

Defendants' wrongdoing or, alternatively, that the amount of losses suffered by the class was minimal. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001).

### 4. The Inability of Defendants to Withstand a Greater Judgment Supports the Settlement

Plaintiffs faced the very significant risk that, even if Plaintiffs prevailed at trial, they would not be able to recover any substantially larger judgment against the Defendants because the cash component of the Settlement ($5,995,000.00) has been paid by Defendants' Directors and Officers Liability insurance carrier, and the policy is a wasting asset. *See* Campisi Decl. ¶ 52. If the litigation were to continue, there would be less cash from insurance available for settlement or recovery because it will have been used in defense costs to defend this Action, as well as a parallel action pending in the Ontario Superior Court of Justice in Canada (*Fricke, et al. v. Nevsun et al*., Court File No. 12-CV-17903). *Id.* Accordingly, this factor weighs in support of the Settlement.

### 5. The Range of Reasonableness of the Settlement Fund Supports the Settlement

Another *Grinnell* factor is whether the settlement amount is reasonable in light of the possible recovery and the risks of litigating the case on the merits.[8] When weighed against the risks of continued litigation, the proposed Settlement compares extremely favorably with the result the Class could have obtained.

The $5,995,000.00 all-cash recovery in this action is a substantial sum as it represents a recovery of approximately 17% of best-case estimated damages. Campisi Decl. ¶ 84. Further,

_____

[8] Courts typically collapse into this inquiry the final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463. *Accord Global Crossing*, 225 F.R.D. at 460.

in light of the unpredictability of a lengthy and complex trial, and the inevitable appellate process that would follow with the risk of reversal, the Settlement falls squarely within the "range of reasonableness."[9]

Plaintiffs' damages expert calculated that the Class' total best-case damages would be approximately $35 million, assuming Plaintiffs prevailed on all of the claims and the jury determined that the entire decline in the price of Nevsun common stock was attributable to the alleged fraud. Campisi Decl. ¶ 84. However, Defendants argued that that some or all of the stock price drops were not caused by revelation of fraud. Campisi Decl. ¶¶ 68-73.

Had a jury (or the Court) credited Defendants' arguments, the potential recoverable damages would have been significantly reduced. Accordingly, Defendants had arguments that, even if they were found liable, Plaintiffs might not obtain a judgment much in excess (if at all) of the settlement amount. In sum, while Plaintiffs believe that their claims are meritorious and that

---

[9] *See Wal-Mart*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (citation omitted); *PaineWebber*, 171 F.R.D. at 125 ("[f]undamental to analyzing a settlement's fairness is 'the need to compare the terms of the compromise with the likely rewards of litigation' ... [t]his determination 'is not susceptible of a mathematical equation yielding a particular sum,' but turns on whether the settlement falls within 'a range of reasonableness'") (citations omitted).

the Class suffered substantial damages, there were no guarantees that Plaintiffs would recover anything.[10]

Moreover, the recovery of $5,995,000 is fair, reasonable and adequate when considering that it represents a recovery of approximately 17% of best-case estimated damages.   In comparison, between 2004 and 2013, the median settlement as a percentage of estimated damages in securities class actions was between 2%-3%.  *See* Campisi Dec. ¶ 84.

At bottom, the proposed recovery is an excellent result for the Class in light of the range of possible recoveries and the attendant risks of continued litigation.  In this context, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

### 6.        The Reaction of the Class Supports the Settlement

Since October 24, 2014, over 12,000 Notices were mailed to members of the Class, and to date not a single objection has been received.  Campisi Decl. ¶ 8, 87, 97.   In addition, to date no requests for exclusion have been received.  Campisi Decl. ¶ 15.   After the January 2, 2015 deadline for submitting objections or exclusion requests, Plaintiffs will file a further memorandum addressing any objections and additional exclusions requests.

---

[10] The risks of maintaining the broadest possible class through trial also supports approval of the Settlement.  The Defendants would also almost certainly have opposed the certification of the Class in continued litigation.   Indeed, the Defendants consented to, and the Court in the Preliminary Order approved, certification of the Class only for purposes of the Settlement. Hence, this factor also supports approval of the Settlement.  *See, e.g.*, *In re AOL Time Warner, Inc.*, 02-cv-5575, 2006 WL 903236, at *12 (Apr. 6, 2006) (increased risk of obtaining class certification absent the class settlement was a factor favoring approval of the class settlement); *Global Crossing*, 225 F.R.D. at 460.

**IV.**   **THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE**

A plan for allocating settlement proceeds, like the settlements themselves, should be approved if it is fair, reasonable and adequate.  *See  ML Tyco*, 249 F.R.D. at 135; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate"); *Maley v. Del Global Tech. Corps.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002); *PaineWebber*, 171 F.R.D. at 132.

Generally, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable."[11]  Plans of allocation, however, need not be tailored to fit each and every class member with "mathematical precision."  *PaineWebber*, 171 F.R.D. at 133.  Rather, broad classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the Settlement Fund.  *Id.* at 133-35.

Among the factors that courts have given great weight in determining the fairness, reasonableness and adequacy of a proposed plan of allocation is the opinion of experienced class counsel.[12]   The Plan of Allocation in this case is recommended by experienced and fully-informed class counsel and should be approved.  Campisi Decl. ¶¶ 87-95.

---

[11] *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citing *In re Computron Software*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998)).

[12] *See In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *34 (S.D.N.Y. July 31, 2008); *see also ML Tyco*, 249 F.R.D. at 135 ("A plan of allocation that is devised by competent and experienced class counsel 'need have only a reasonable, rational basis.'") (citation omitted); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 429-430 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel .... As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."); *In re NASDAQ Market-Makers Antitrust Litig.*, No. 94-cv-3996, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000).

Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who wish to be potentially eligible to participate in the distribution of the Settlement Fund must submit a Claim Form no later than January 22, 2015.  After deducting all appropriate taxes, administrative costs, attorneys' fees and reimbursement of litigation expenses, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation.  *See* Notice at ¶¶ 8-11.  If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who timely submit valid Claim Forms ("Authorized Claimants").  The Plan of Allocation is detailed in the Notice (¶ 9 of the Notice), and is designed to achieve an equitable and rational distribution of the Net Settlement Fund.

Co-Lead Counsel developed the Plan of Allocation in consultation with Co-Lead Plaintiffs' damages expert.  Co-Lead Counsel and their expert believe that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Class Members.  The Plan of Allocation reflects Plaintiffs' damages expert's analysis, including a review of publicly available information regarding Nevsun and statistical analysis of the price movements of Nevsun common stock and the price performance of relevant market and industry indices.

The Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund calculated in accordance with the Plan of Allocation.  Calculation of the Authorized Claimants' share will depend upon several factors, including whether Nevsun common stock was purchased on the New York Stock Exchange or other U.S. trading platform, when Nevsun common stock was purchased, and whether it was retained or sold, and if so, when and for how much.

16

In sum, the Plan of Allocation, developed in consultation with and approved by Plaintiffs'

damages expert, was designed to fairly and rationally allocate the proceeds of the Net Settlement

Fund among Class Members based on the amount of damages allegedly suffered as a result of the

fraud.  Accordingly, Co-Lead Counsel respectfully submit that the Plan of Allocation is fair and

reasonable and should be approved.

## V.     NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS
##         OF RULE 23 AND DUE PROCESS

The Preliminary Approval Order granted preliminary approval of the Settlement, certified

the Class for settlement purposes, approved the appointment of Garden City Group, Inc.

("GCG") as the Claims Administrator, ordered that notice be disseminated to the Class, and set

December 25, 2014 as the deadline to submit any requests for exclusion, and January 2, 2015 as

the deadline to submit any objections to the Settlement and the Plan of Allocation.  The Court

also set a final approval hearing date of January 22, 2015.  ECF No. 45.

Among other information, the Notice contains a thorough description of the Settlement,

the Plan of Allocation and Class Members' rights to:  (i) participate in the Settlement; (ii) object

to the Settlement, Plan of Allocation or request for attorneys' fees and reimbursement of

expenses; or (iii) exclude themselves from the Class.  To disseminate the Notice, GCG obtained

the names and addresses of potential Class Members from listings provided by Nevsun, and from

banks, brokers and other nominees pursuant to the Preliminary Approval Order.  Campisi Decl.

Exhibit 1, ¶¶ 3-6 of the Fraga Aff.

Pursuant to the Preliminary Approval Order, since October 24, 2014, GCG has

disseminated approximately 12,000 copies of the Notice and Proof of Claim (the "Notice

Packet").  Campisi Decl. ¶ 8.   On November 5, 2014, GCG caused the publication of the

Summary Notice in *Investor's Business Daily* and through *PRNewswire*.  Campisi Decl. ¶ 12.
Co-Lead Counsel also caused the creation of a toll-free informational telephone line (*id.* ¶8) and
caused information regarding the Settlement to be posted on the website specifically established
for the Settlement, http://www.nevsunresourcessettlement.com/, which provides access to,
among other documents, downloadable copies of the Notice and Proof of Claim.  Information
about the Settlement is also posted on Kaplan Fox's website.  Campisi Decl. ¶ 13.

Notice to class members satisfies due process where it is "reasonably calculated, under all
the circumstances, to apprise interested parties of the pendency of the action and afford them an
opportunity to present their objections."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D.
362, 368 (S.D.N.Y. 1996) (citation omitted); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145
(S.D.N.Y. 2010).  Notice need not be perfect or received by every Class Member, but instead be
the best practicable in the circumstances.  *See ML Tyco*, 249 F.R.D. at 133.  Additionally, notice
is adequate if the average Class Member understands the terms of the proposed settlement and
the options they have.  *See Wal-Mart*, 396 F.3d at 114; *ML Tyco*, 249 F.R.D. at 133.

Here, notice of the Settlement was sent via direct mail to all Class Members who GCG,
the Claims Administrator, identified with reasonable effort, as the Preliminary Order directed.
Approximately 12,000 Notices were mailed.  Campisi Decl. ¶ 8.  In addition, the Summary
Notice was timely published in *Investor's Business Daily* and electronically via *PRNewswire* on
November 5, 2011, and is available on the internet (http://www.nevsunresourcessettlement.com).
Campisi Decl. ¶ 12.  The notices summarized in plain language the Settlement and Class
Members' rights.  Hence, the notice program here was reasonable.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Lead Plaintiffs respectfully request that: 1) the parties' Settlement be approved by the Court as fair, reasonable and adequate, 2) and the Plan of Allocation be approved.

Dated: December 24, 2014                          Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:_____/s/  Jeffrey P. Campisi_____   _____
Robert N. Kaplan (rkaplan@kaplanfox.com)
Frederic S. Fox (ffox@kaplanfox.com)
Jeffrey P. Campisi (jcampisi@kaplanfox.com)
850 Third Avenue, 14th Floor
New York, New York 10022

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky (sdr@rigrodskylong.com)
Timothy J. MacFall
(tjm@rigrodskylong.com)
825 East Gate Boulevard; Suite 200
Garden City, New York 11530

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system that will electronically send notification of such

filing to all counsel of record.

Executed on December 24, 2014 in New York, New York.

_____/s/ Jeffrey P. Campisi_____

JEFFREY P. CAMPISI