**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x:
                                        :

IN RE: NEVSUN RESOURCES LTD.          :      Civil Action No. 12 Civ. 1845 (PGG)
                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND LEAD PLAINTIFF'S REQUEST FOR AN AWARD OF <u>REASONABLE COSTS AND EXPENSES</u>

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan
Frederic S. Fox
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, New York 10022
Tel:  (212) 687-1980
Fax:  (212) 687-7714

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, New York 11530
Tel: (516) 683-3516

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

December 24, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

I.      RELEVANT FACTS ........................................................................3

II.     THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES ...............3

      A.     The Requested Attorneys' Fees Are Fair And Reasonable under Both the Lodestar/Multiplier Method and the Percentage of the Fund Method....................5

            1.     The Requested Fees are Reasonable Under the Lodestar Cross-Check ......5

                  a.     The Number of Hours Worked by Co-Lead Counsel in Connection With this Litigation was Reasonable ...........................6

                  b.     The Rates Charged by Co-Lead Counsel are Reasonable ..............7

                  c.     The Requested Multiplier is Well within the Range Found to be Reasonable. .................................................................................9

            2.     The Requested Fees are Reasonable Under the Percentage Method .........10

      B.     The Requested Attorneys' Fees Are Reasonable Based on the Second Circuit Criteria ........................................................................11

            1.     The Time and Labor Expended by Counsel to Produce a Settlement Supports the Fee Requested by Co-Lead Counsel ....................................12

            2.     The Magnitude and Complexity of this Litigation Support the Award of the Fee Requested by Co-Lead Counsel .................................................13

            3.     The Substantial Risks to Plaintiff's Recovery Fully Support The Fee Requested By Co-Lead Counsel ................................................................14

                    a.     The Contingent Nature of Co-Lead Counsel's Representation .....14

                    b.     Risks Concerning Liability ...........................................................15

                    c.     Risks Concerning Damages ...........................................................16

            4.     The Quality of Co-Lead Counsel's Representation of the Class Supports the Fee Requested .....................................................................16

            5.     The Fee Requested is Fair in Relation to the Settlement Fund .................17

            6.     Public Policy Considerations Fully Support the Fee Requested...............17

      C.     To Date, No Class Members Have Objected to the Requested Fee......................19

i

III.    THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE..........20

IV.    LEAD PLAINTIFF'S REQUEST FOR AN AWARD OF REASONABLE COSTS
       AND EXPENSES ..........................................................................................................21

CONCLUSION..................................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Adair v. Bristol Tech. Sys., Inc*.,
    No. 97 Civ. 5874 (RWS), 1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 16,
    1999) ...............................................................................................................10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)........................................................................................17

*Blum v. Stenson*,
    465 U.S. 886 (1984)..........................................................................................8

*Boeing Co. v. Van Gernert*,
    44 U.S. 472 (1980)............................................................................................4

*City of Providence v. Aéropostale, Inc*.,
    No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9,
    2014) ...................................................................................................... passim

*Clem v. KeyBank, N.A.*,
    No. 13 Civ. 789 (JCF), 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014)...........18

*Cruz v. Local Union No. 3 of the IBEW*,
    34 F.3d 1148 (2d Cir. 1994)..............................................................................8

*Detroit v. Grinnell Corporation,*
    495 F.2d 448 (2d Cir. 1974)............................................................................14

*Faircloth v. Certified Fin. Inc*.,
    No. 99-3097, 2001 U.S. Dist. LEXIS 6793, (E.D. La. May 16, 2001)............................11

*Fogarazzo v. Lehman Bros.*,
    No. 03-cv-5194, 2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011).......................13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................ passim

*Hicks v. Stanley*,
    No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................21

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................4, 14, 20

*In re Arakis Energy Corp., Sec. Litig.*,
No. 95 CV 3431 (ARR), 2001 U.S. Dist. LEXIS 19873 (E.D.N.Y. Aug. 17, 2001) ........20

*In re China Sunergy Secs. Litig.*,
07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)..............10

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ...............................................................................11

*In re E.W. Blanch Holdings, Inc. Sec. Litig.*,
No. 01-258, 2003 U.S. Dist. LEXIS 26402,  (D. Minn. June 16, 2003)...........................11

*In re Eng'g Animation Sec. Litig.*,
203 F.R.D. 417 (S.D. Iowa 2001) .....................................................................................11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27,
2007) ...........................................................................................................................4, 9, 20

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5,
2010) ......................................................................................................................... passim

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT(RCx), 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10,
2005) .................................................................................................................................11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23,
2009) .....................................................................................................................15, 21, 22

*In re Merrill Lynch Tyco Research Secs. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................................18

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
912 F. Supp. 97 (S.D.N.Y. 1996) .....................................................................................19

*In re Prudential Sec. Inc. Ltd. P'shps, Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) .....................................................................................6

*In re Ravisent Techs., Inc. Sec. Litig.*,
No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) .......................11

*In re Safety Components Int'l, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .....................................................................................11

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................5, 8, 9, 19

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................12

*In re Unisys Corp. Sec. Litig.*,
  No. 99-5333, 2001 U.S. Dist. LEXIS 20160 (E.D. Pa. Dec. 6, 2001).............................11

*In re Veeco Instruments Secs. Litig.*,
  No. 05 MDL 1695, 2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ....................6

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................18

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998).................................................................................7

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997).................................................................................8

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................9, 10, 19

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08-cv-8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010)......................10

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).........................................................................................7

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ........10

*Morrison v. National Australia Bank*,
  561 U.S. 247 (2010).........................................................................................2

*Neuberger v. Shapiro*,
  110 F. Supp. 2d 373 (E.D. Pa. 2000) ....................................................................11

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992)..........................................................................19

*Silva v. Little Fish, Corp.*,
  10-CV-7801 (PGG), 2012 U.S. Dist. LEXIS 89485 (S.D.N.Y. May 1, 2012)................10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................5

*Teachers' Ret. Sys. of La. v. A.C.L.N, Ltd.*,
   No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14,
   2004) .................................................................................................................7, 17, 20

*Toland v. Prudential Sec. P'ship Litig.*,
   107 F.3d 3 (2d Cir. 1996)..............................................................................19

*Trustees v. Greenough*,
   105 U.S. 527 (1882)........................................................................................4

*Varljen v. H.J. Meyers & Co.*,
   97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 (S.D.N.Y. Nov. 8, 2000) ...........................22

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693 (PGG), 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013).........18

**Rules & Statutes**

15 U.S.C. § 78u-4 .........................................................................................3

15 U.S.C. § 78u-4(a)(6) ................................................................................4

Fed. R. Civ. P. 23 ..........................................................................................4

Fed. R. Civ. P. 23(h) .....................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs' Co-Lead Counsel[1] respectfully submits this memorandum of law in support of its motion pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees and reimbursement of litigation expenses to be paid out of the Settlement Fund.  The proposed Settlement recovers $5,995,000 for the Class.  Co-Lead Counsel respectfully seek an award in the amount of 33⅓% of the Settlement Amount, or $1,998,133.50, which is a lodestar multiplier of approximately 1.48 – a multiplier well below multiples that have been approved by courts in this District; and 2) an award of $91,357.40 for reimbursement of expenses actually incurred in prosecuting this class action litigation (the "Action" or the "Litigation"), an amount well below $175,000, the amount Co-Lead Counsel could have requested as set forth in the Notice.[2]

As set forth below, this request is reasonable considering the factors identified by the Second Circuit in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) to determine appropriateness of a fee award.  The requested fee is consistent with fees awarded in similar actions in this Circuit and uses the appropriate method of compensating counsel.

---

[1] The defined terms herein are those contained in the Stipulation of Settlement dated May 1, 2014 (ECF. No. 39) ("Stipulation of Settlement").

[2] The "Notice" refers to the Class Notice which was mailed to Settlement Class members commencing on October 24, 2014.  *See* Declaration of Jeffrey P. Campisi, dated December 24, 2014, ¶ 8. The "Campisi Declaration" or "Campisi Decl." refer to the Declaration of Jeffrey P. Campisi in Support of (1) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and (2) Plan of Allocation of Settlement Proceeds; (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses; and (4) Lead Plaintiff's Request for an award of Reasonable Costs and Expenses.

The amount requested is warranted in light of the recovery obtained for the Class.[3]   The Settlement represents an outstanding result for the Class after approximately two years of litigation, during which Co-Lead Counsel expended a significant amount of time and effort investigating and prosecuting the claims.  Co-Lead Counsel's work included a review and analysis of all of Nevsun's publicly available filings and financial statements; consulting with experts in economic loss and damages, an expert in the mining industry, and experts concerning customs, laws and practices in Eritrea (where the Bisha Mine is located); locating and interviewing former Nevsun and Bisha mine employees, and drafting a consolidated complaint.  Campisi Decl. ¶ 25.[4] Further, Co-Lead Counsel researched and prepared the opposition to Defendants' motion to dismiss the Amended Complaint, and after the Court denied in part and grated in part Defendants' motion to dismiss, Co-Lead Counsel engaged in complex settlement negotiations over the course of approximately six months that involved two in person mediations, and numerous conference calls with the mediators and separately with Defendants' counsel.  Campisi Decl. ¶¶ 29-48.

After the parties reached a settlement in principle, the parties diligently negotiated the terms of the Settlement, which included additional negotiations among the parties.  Campisi Decl. ¶ 48.  Co-Lead Counsel also prepared papers in support of the Settlement and has been overseeing

---

[3]  The Company is a Canadian corporation and its common stock trades in both the United States and on the Toronto Stock Exchange.  A parallel action on behalf of Canadian purchasers of Nevsun common stock during the same class period (*Fricke, et al. v. Nevsun et al.*, Court File No. 12-CV-17903 (the "Canadian Action")) has also been settled in Canada.  The settlement presented to the Court for preliminary approval is only on behalf of purchasers who purchased on the New York Stock Exchange or other U.S. trading platform during the Class Period.  *See Morrison v. National Australia Bank*, 561 U.S. 247 (2010).

[4] The Campisi Declaration fully describes the history of the Litigation, the claims asserted, the efforts of Co-Lead Counsel, and the negotiations leading to the Settlement set forth in the Stipulation.  The Settlement Memorandum sets forth the arguments for the final approval of the Settlement, as well as the structure of, and basis for, the Plan of Allocation.  All capitalized terms not otherwise defined have the definitions set forth in the Stipulation and Agreement of Settlement. ECF No. 39.

the Claims Administrator in connection with the notice process.  Campisi Decl. ¶¶ 48, 111-13.
Over the next several months Co-Lead Counsel will continue to oversee the notice and claims
process, and the requested award would compensate Co-Lead Counsel for its anticipated work in
the future overseeing the claims process and distribution of the Settlement Fund to Class
members.[5]  All of Co-Lead Counsel's work was performed on a contingency fee basis and was at
risk.  Campisi Decl. ¶ 102.

Mr. Craig F. Piazza, the Court-appointed Lead Plaintiff, has expended significant effort in
overseeing this Litigation and, more significantly, has incurred substantial costs in time and lost
business opportunities and seeks an award of $8,500 for his reasonable costs and expenses,
including lost wages, as is permitted under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(4).  *See* Campisi
Decl., Exhibit 13.

As set forth in the Notice, the deadline for Class members to object to the attorneys' fee
request, the request for reimbursement of expenses, or Lead Plaintiff's request for an award of
reasonable costs and expenses is January 2, 2015.  To date, no objections have been received.

For the reasons set forth below and in the Campisi Declaration, Co-Lead Counsel's and
Lead Plaintiff's respective applications should be approved by the Court.

## I.    RELEVANT FACTS

The facts relevant to this motion are set forth in detail in the accompanying Campisi
Declaration and the Settlement Memorandum.  For the sake of brevity, the facts will not be
repeated, but are incorporated by reference herein.

## II.    THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES

---

[5] Submitted contemporaneously herewith are the Memorandum in Support of (1) Plaintiffs'
Motion for Final Approval of Proposed Class Action Settlement and (2) Plan of Allocation of
Settlement Proceeds (the "Settlement Memorandum"), and the Campisi Declaration.

Federal Rule of Civil Procedure 23(h) provides in relevant part that, in connection with this Class certification and Settlement, the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h). *See also* Fed. R. Civ. P. 23 advisory committee's note (clarifying applicability of subdivision (h) where, as here, there is "a simultaneous proposal for class certification and settlement"). The PSLRA provides that class counsel are entitled to attorneys' fees representing a "reasonable percentage" of the damages paid to class members. *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (quoting 15 U.S.C. § 78u-4(a)(6)) (emphasis removed). Such an award is appropriate where, as here, Co-Lead Counsel has created a common fund in the amount of $5,995,000 plus interest to be shared by the Class.

Pursuant to the "'equitable' or 'common fund' doctrine established more than a century ago" in *Trustees v. Greenough*, 105 U.S. 527, 532-33 (1882), "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *Am. Bank*, 127 F. Supp. 2d at 430; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *43 (S.D.N.Y. July 27, 2007) ("The Supreme Court has recognized that 'a lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole.'") (quoting *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980)). Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *Goldberger*, 209 F.3d at 47 (the common fund doctrine "prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost"); *Am. Bank*, 127 F. Supp. 2d at 430 ("[T]he costs of litigation should be spread among the fund's beneficiaries."); *accord City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *30 (S.D.N.Y. May 9, 2014).

4

The Second Circuit, in *Goldberger*, identified a "need for fee awards to be fair and reasonable, and described two forms of fee calculation methodologies -- the first used as a check for reasonableness, the latter serving as the preferred method." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008). "The first is the 'lodestar' method, where 'the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.'" *Id.* (citing *Goldberger*, 209 F.3d at 47). "Once the lodestar is calculated, the court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Id.* (citing *Goldberger*, 209 F.3d at 47) (internal quotations omitted). The second method for calculating fees is the "percentage of recovery" method. *Id.*

A. **The Requested Attorneys' Fees Are Fair And Reasonable under Both the Lodestar/Multiplier Method and the Percentage of the Fund Method**

The requested fee award is fair and reasonable under either the "lodestar/multiplier" approach or percentage of the fund method. Co-Lead Counsel requests a fee award of 33⅓% of the Settlement Fund, or $1,998,133.50. Campisi Decl. ¶¶ 17, 96. As discussed below, the requested fee is well within the range of fees approved by courts in this Circuit and elsewhere, under the percentage of the fund method. Further, the "cross-check" with a lodestar analysis also supports the fee requested as the lodestar multiplier is approximately 1.48. *Id.*

1. **The Requested Fees are Reasonable Under the Lodestar Cross-Check**

As noted above, the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (citation omitted); *accord, e.g., Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 263 (S.D.N.Y. 2003); *Telik*, 576 F. Supp. 2d at 588. "Where the lodestar is 'used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized

by the district court.'" *In re Veeco Instruments Secs. Litig.*, No. 05 MDL 1695, 2007 U.S. Dist. LEXIS 85554, at *15 (S.D.N.Y. Nov. 7, 2007) (quoting *Goldberger*, 209 F.3d at 50).  As set forth below, the "cross-check" with a lodestar analysis also supports the fee requested.

> ### a.    The Number of Hours Worked by Co-Lead Counsel in Connection With this Litigation was Reasonable

"A lodestar analysis begins with the calculation of the lodestar, which is 'comprised of the amount of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel.'" *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *73 (S.D.N.Y. Nov. 5, 2010) (citing *In re Prudential Sec. Inc. Ltd. P'shps, Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997)).  Here, Co-Lead Counsel performed a substantial amount of work on behalf of the Class.  Campisi Decl. ¶¶ 6, 25, 29, 35-48.  For instance, Co-Lead Counsel: (1) investigated the claims; (2) reviewed and analyzed all of Nevsun's publicly available filings and financial statements; (3) drafted and filed the initial complaint; (4) filed a motion to appoint lead plaintiff and counsel; (5) worked with an industry expert in connection with the claims asserted in the Amended Complaint, as well as assertions made in connection with Defendants' motion to dismiss; (6) worked with an investigator to identify and locate relevant witnesses; (7) interviewed numerous confidential sources and fact witnesses; (8) drafted and filed the Amended Complaint; (9) researched and prepared the opposition to Defendants' motion to dismiss the Amended Complaint; (10) worked with an economics expert in connection with the loss of market value for Nevsun and the potential recoverable damages for investors who purchased Nevsun stock on exchanges on or other trading platforms in the United States during the Class Period; (10) prepared mediation submissions; (11) attended 2 mediation sessions (one with Jonathan Marks in New York and one with the Hon. Layn Phillips, U.S.D.J. (Ret.)) in Los Angeles, California, and spent many hours directly negotiating with defense counsel; (12) negotiated the terms of the

Stipulation and Agreement of Settlement; (13) worked with Plaintiffs' economic expert to formulate the Plan of Allocation; (14) prepared papers in support of the settlement; and (15) oversaw the Claims Administrator in connection with the notice process. *Id.*

In light of the complexity of the claims and defenses asserted by the parties, the amount of time litigating on behalf of the Class, and the complex nature of the negotiations that produced the Settlement, Co-Lead Counsel respectfully submit the total number of hours billed in connection with this Action – 2,461 hours – is reasonable. *Id.* ¶ 96.

A number of relevant factors fully support this conclusion. Co-Lead Counsel have made every effort to be efficient in litigating this action. *Id.* ¶¶ 104-13. Furthermore, Co-Lead Counsel are highly experienced in prosecuting securities law claims and shareholder class actions. Campisi Decl. ¶¶ 114-19. Thus, Co-Lead Counsel were able to perform the various tasks necessary to advance Plaintiffs' and the Class's interests in a more efficient manner than would have counsel with a lesser degree of specialization in this highly complex field. *See, e.g., Teachers' Ret. Sys. of La. v. A.C.L.N, Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *20 (S.D.N.Y. May 14, 2004) (noting that the skill and prior experience of counsel in the specialized field of shareholder securities litigation is relevant in determining fair compensation).

### b. The Rates Charged by Co-Lead Counsel are Reasonable

The second step in the lodestar cross-check analysis is to assess the reasonableness of the current billing rates charged by Co-Lead Counsel.[6] Courts have consistently found appropriate

---

[6] The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment" by applying "current" rate is appropriate); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment").

hourly rates to be "'those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886 (1984)); *see also Luciano v. Olsten Corp*., 109 F.3d 111, 115-16 (2d Cir. 1997); *accord Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at \*75.  Perhaps the best indicator of the "market rate" in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis.  *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at \*38 (finding the rates charged by Co-Lead Counsel were in line with rates charged by New York firms that defend class actions on a regular basis and citing *Telik*, 576 F. Supp. 2d at 589).[7]  Viewed in light of that market barometer, Co-Lead Counsel's rates are entirely reasonable.

The current hourly rates of the partners litigating on behalf of the Class that performed the vast majority of the partner-level work on this matter (Mr. Campisi and Mr. MacFall) range from $615 to $700.  *See* Campisi Decl., Ex. 5 (Kilsheimer Aff., Ex. B); Ex. 6 (MacFall Decl., Ex. B). Those rates fall well within the norm of the rates charged by those attorneys' common adversaries in the defense bar.  *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at \*38-39 (finding that partner rates ranging from $640 to $875 per hour were in line with rates charged by New York firms that defend class actions); *Telik*, 576 F. Supp. 2d at 589 (finding that partner rates ranging from $700 to $750 per hour were in line with rates charged by New York firms that defend class actions).

---

[7] According to a June 16, 2012 online article in *The Wall Street Journal*, entitled *bankruptcy Fees: The $1,800-an-Hour Ted Olsen Edition*, partners at Gibson, Dunn & Crutcher, LLP charged hourly rates ranging from $1,800 to $765 per hour and associates were billed out at $640 to $440 per hour.   *See*   http://blogs.wsj.com/law/2012/06/06/bankruptcy-fees-the-ted-olson-edition/   (last viewed on Dec. 17, 2014).

Likewise, associate rates for work charged by Co-Lead Counsel were billed at rates ranging between $315 and $580 per hour. *See* Campisi Decl., Ex. 5 (Kilsheimer Aff., Ex. B); Ex. 6 (MacFall Decl., Ex. B). Again, those rates are consistent with those charged by the defense bar for similar work. *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *38-39 (finding rates for attorneys, other than partners, ranging from $335 to $725 per hour were in line with rates charged by New York firms that defend class actions); *Telik*, 576 F. Supp. 2d at 589 (finding associate rates ranging from $300 to $550 per hour were in line with rates charged by New York firms that defend class actions). Thus, a market check and precedent from this District demonstrate that the rates utilized by Co-Lead Counsel in calculating their lodestars are reasonable.

### c. The Requested Multiplier is Well within the Range Found to be Reasonable.

Utilizing the number of hours and hourly billing rates set forth in the firm hours and expense report attached to the Campisi Declaration, Co-Lead Counsel's lodestar is $1,350,472.50. Campisi Decl. ¶ 96. Thus, the fee requested is approximately 1.48 times Co-Lead Counsel's lodestar. *Id.* "'In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.'" *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *76-77 (citing *Telik*, 576 F. Supp. 2d at 590 for the proposition that a multiplier of 4.65 was well within the range awarded by courts in this Circuit and courts throughout the country) (citation and quotations omitted); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country"); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *55-56 & n.7 (2.48 multiplier "is within the range found to be reasonable") (collecting cases and noting that "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District."). Here, Co-Lead Counsel seek a multiplier of approximately 1.48, well within that range.

### 2.    The Requested Fees are Reasonable Under the Percentage Method

On a percentage basis, the amount of attorneys' fees requested of one-third of the Settlement Fund is in the same range as attorneys' fees awards made by courts in the Second Circuit. *See, e.g., Silva v. Little Fish, Corp.,* 10-CV-7801 (PGG), 2012 U.S. Dist. LEXIS 89485, at *6 (S.D.N.Y. May 1, 2012) (awarding fees of one third of recovery); *In re China Sunergy Secs. Litig.*, 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *16 (S.D.N.Y. May 13, 2011) (awarding fees of 33 1/3% of recovery achieved in mediated settlement reached while motion to dismiss pending); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-8713, 2010 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y. Mar. 2, 2010) (awarding fees of 33% of the recovery achieved in mediated settlement reached after the parties had engaged in "an efficient, informal exchange of information"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding attorneys' fees over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Maley*, 186 F. Supp. 2d at 368 (awarding 33 1/3% of $11.5 million settlement  while motions to dismiss were pending); *Adair v. Bristol Tech. Sys., Inc*., No. 97 Civ. 5874 (RWS), 1999 U.S. Dist. LEXIS 17627, at *8-10 (S.D.N.Y. Nov. 16, 1999) (awarding requested counsel fee of 33% of the recovery achieved through negotiations following denial of motion to dismiss, and finding that "Courts in this District

have previously awarded fees at or exceeding this level on numerous occasions").[8]  Thus, Co-Lead

Counsel's request for an award of one-third of the Settlement Fund is consistent with fees awarded

in this District.

**B.      The Requested Attorneys' Fees Are Reasonable Based on the Second Circuit
           Criteria**

The *Goldberger* Court held that the appropriate percentage fee in a class action is a matter

of judicial discretion that "should be assessed based on scrutiny of the unique circumstances of

each case . . . ."  *Goldberger*, 209 F.3d at 53.  The Second Circuit did, however, set forth the

factors that should be considered by district courts in arriving at a suitable percentage.

Specifically, the court held that:

> [D]istrict courts should continue to be guided by the traditional criteria in
> determining a reasonable common fund fee, including: "(1) the time and labor
> expended by counsel; (2) the magnitude and complexities of the litigation; (3) the
> risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in
> relation to the settlement; and (6) public policy considerations."

---

[8] The requested fee is also in line the fee awards in many cases such as this throughout the rest of
the country.  *See, e.g., City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *60 (collecting
relevant cases); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT(RCx), 2005 U.S. Dist. LEXIS
13555, at *61 (C.D. Cal. June 10, 2005) (awarding 33 1/3% of $27.783 mil. settlement); *In re
Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *51 (E.D. Pa.
Apr. 18, 2005) (awarding attorneys' fees of one-third of $7 million settlement); *In re Corel Corp.
Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (awarding 33 1/3% of $7 million
settlement); *In re E.W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258, 2003 U.S. Dist. LEXIS
26402, at *10 (D. Minn. June 16, 2003) (awarding 33 1/3% of $20 million settlement); *Faircloth
v. Certified Fin. Inc*., No. 99-3097, 2001 U.S. Dist. LEXIS 6793, at *37 (E.D. La. May 16, 2001)
(awarding attorneys' fees of 35% of $1.6 million settlement fund); *In re Eng'g Animation Sec.
Litig.*, 203 F.R.D. 417, 423-24 (S.D. Iowa 2001) (awarding attorneys' fees of $2.5 million, or one
third of common fund); *In re Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 U.S. Dist. LEXIS 20160,
at *10 (E.D. Pa. Dec. 6, 2001) (approving fee of 33% as "fair and reasonable"); *In re Safety
Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 101-02 (D.N.J. 2001) (approving fee request
of one-third of $4.5 million settlement); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa.
2000) (approving one third of $4,325,000 settlement fund).

*Id*. at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig*., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

       **1.**      **The Time and Labor Expended by Counsel to Produce a Settlement Supports the Fee Requested by Co-Lead Counsel**

The first factor set forth in *Goldberger* for determining an appropriate attorneys' fee is the time and labor expended by counsel. *Goldberger*, 209 F.3d at 50. As is detailed in the Campisi Declaration, the Settlement was the direct result of the efforts of Co-Lead Counsel. Campisi Decl. ¶¶ 35-48. In total, Co-Lead Counsel have spent at least 2,461 hours litigating this matter over the course of approximately two years. *Id.* ¶ 96. Co-Lead Counsel expended substantial time researching and investigating Nevsun and its business activities, working with an industry expert, an investigator, and an economics expert with respect to the loss of market value for Nevsun and the potential recoverable damages in the Litigation. *Id.* ¶ 25.

In addition, Co-Lead Counsel spent a considerable time drafting the Amended Complaint; researching and briefing the opposition to Defendants' motion to dismiss; preparing submissions for, and attending, two separate mediation sessions; negotiating the terms of the Settlement, including the drafting of necessary settlement documents. Co-Lead Counsel participated in an initial mediation session conducted before Jonathan Marks, Esq. Campisi Decl., ¶¶ 39-41. That mediation was unsuccessful, however, the parties continued to engage in negotiations which culminated in a second mediation session before the Hon. Layn Phillips, U.S.D.J. (Ret.). In both sessions, the complexity of the negotiations were compounded by efforts to simultaneously resolve parallel litigation brought on behalf of investors who purchased Nevsun securities on Canadian exchanges. Campisi Decl., ¶ 38. Plaintiffs were only able to achieve this Settlement when the U.S. and Canadian actions were mediated separately, as opposed to part of a global resolution. Campisi Decl., ¶ 45. Thereafter, numerous exchanges via e-mail and telephone calls followed so that the

settling parties could reach an agreement on the necessary settlement documentation.  *Id.* ¶ 48.

Ultimately, the efforts of Co-Lead Counsel and Nevsun's counsel resulted in the execution of the

settlement documents.  *Id.*

Thus, Co-Lead Counsel expended significant time and labor in prosecuting Plaintiffs'

claims.  Those concerted efforts were undertaken on a contingent fee basis despite the possibility

that Plaintiffs and the Class might not prevail in this Action, and that Co-Lead Counsel could,

therefore, receive nothing for their efforts.  The "time and labor expended by counsel" in producing

the proposed Settlement, therefore, supports the $1,998,133.50 fee requested by Co-Lead Counsel.

### 2.    The Magnitude and Complexity of this Litigation Support the Award of the Fee Requested by Co-Lead Counsel

The second factor is the "magnitude and complexities of the litigation."  *Goldberger*, 209

F.3d at 50.  The discussion of those issues in the Campisi Declaration amply demonstrates that this

case was complex.  Campisi Decl. ¶¶ 56-86; *see also City of Providence*, 2014 U.S. Dist. LEXIS

64517, at *45-46 ("Indeed, the complex and multifaceted subject matter involved in a securities

class action such as this supports the fee request.") (citing *Fogarazzo v. Lehman Bros.*, No. 03-cv-

5194, 2011 U.S. Dist. LEXIS 17747, at *10 (S.D.N.Y. Feb. 23, 2011) for the proposition that

"courts have recognized that, in general, securities actions are highly complex").  This factor also

supports the reasonableness of the fee.

Marshalling proof in connection with asserting Plaintiffs' claims was challenging.  Campisi

Decl. ¶ 75.  Although Nevsun is a Canadian corporation, its Bisha Mine operations are located in

the State of Eritrea, and many of the witnesses also reside outside of North America.  *Id.* ¶ 76-78.

Defendants asserted that contractual obligations with the Eritrean government, which owns a

substantial interest in the Bisha mine, would constrain their ability to produce documents in the

Litigation absent order of a court in Eritrea.  Campisi Decl. ¶ 78.  In light of these obstacles, Co-

Lead Counsel's ability to tackle a case of this magnitude and complexity, and produce a beneficial result for the Class fully supports the requested fee.

### 3. The Substantial Risks to Plaintiffs' Recovery Fully Support The Fee Requested By Co-Lead Counsel

The attorneys' "risk of the litigation" is also a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiff's counsel in class actions. *Goldberger*, 209 F.3d at 50.

### a. The Contingent Nature of Co-Lead Counsel's Representation

Here, Co-Lead Counsel faced significant risks that they might be unsuccessful in obtaining any recovery for the Class and, therefore, that they would receive no payment for their efforts. Campisi Decl. ¶¶ 102-03; *see also* ¶¶ 55-86. In *Detroit v. Grinnell Corporation*, the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

495 F.2d 448, 470-71 (2d Cir. 1974) (citation omitted); *Am. Bank*, 127 F. Supp. 2d at 433 (it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award") (citation omitted).

Co-Lead Counsel undertook their representation in this Litigation on a contingent-fee basis, investing a substantial amount of time and money to prosecute this Action in the expectation that, if they were successful in obtaining a recovery for the Class they would receive a percentage of that recovery, but without a guarantee of compensation, or even the recovery of out-of-pocket expenses. Thus, Co-Lead Counsel might have expended a substantial amount of attorney time in pursuing this Action, yet receive no compensation whatsoever if the Action proved ultimately unsuccessful. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed

14

for their expenses on a regular basis, Co-Lead Counsel have not been compensated for any time or expenses in their prosecution of this Action and would have received no compensation or even reimbursement of expenses had this Action not been successful.

### b.    Risks Concerning Liability

The "Second Circuit has identified 'the risk of success as perhaps the foremost factor to be considered in determining [a reasonable award of attorneys' fees.]'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *52 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger*, 209 F.3d at 54).   While Plaintiffs believe they would have prevailed on their claims, they are, nonetheless, cognizant that there was a risk that they would have been unsuccessful.  Campisi Decl. ¶¶ 55-80.

Nevsun argued that the estimates of mineral resources and reserves were prepared prior to the start of mining operations in the early "feasibility" stage of a mining project, based on a "block model" constructed by its independent expert, AMEC.  Moreover, Defendants argue that under Canadian law, Nevsun was required to accept AMEC's certified estimates and was prohibited from disclosing any estimates that were not supported by a "technical report" prepared and certified by an independent expert such as AMEC.

Defendants argued that detection of deviations between AMEC's block model and actual mining results raised no red flags as this was common during the first few months of mining operations, when mining operations are only focused on one or two of the "blocks" in the block model.  Defendants asserted that witnesses would testify that deviation from a block model could be caused by any number of unanticipated factors, such as water content in areas of the mine.

Defendants stated that their mining expert would testify that Nevsun's reconciliation of the block model with actual results after the first full year of mining was normal industry practice.

15

Upon determining that the original estimate of gold reserves deviated from Nevsun's mining results, Defendants assert that they promptly disclosed that to the market.[9]

### c.  Risks Concerning Damages

As detailed in the Campisi Decl. ¶¶ 81-86, there were significant risks to establishing damages had this case not settled.  Further, if this litigation were to continue, it is likely that the Class recovery would be substantially diminished because it is being funded from the Defendants' Director & Officer Liability insurance policy, which is a wasting asset.  Campisi Decl. ¶ 52.  If the litigation were to continue, there would be less cash from insurance available for settlement or recovery because it will have been used in defense costs to defend this Action, as well as the parallel Canadian Action.

### 4.  The Quality of Co-Lead Counsel's Representation of the Class Supports the Fee Requested

The fourth factor cited by the Second Circuit for determining the percentage fee to be awarded to class counsel is the "quality of representation" delivered in the litigation.  *See Goldberger*, 209 F.3d at 50.  Co-Lead Counsel believe that they have provided excellent representation to the Class, given the serious challenges that arose during litigation of the Action. As described more fully in the Campisi Declaration, the Settlement represents a strong recovery for the Class in light of the significant risks.  Campisi Decl. ¶¶ 53-86.  The quality of Co-Lead

---

[9] A more fulsome discussion of the risks to establishing liability is set forth in the Campisi Decl., ¶¶ 53-73.

Counsel's work is evidenced by the fact that they were able to obtain a favorable result for the Class in the face of such substantial risks.[10]

### 5. The Fee Requested is Fair in Relation to the Settlement Fund

The fifth factor cited by the Second Circuit for determining the appropriate percentage fee award in class actions is the "requested fee in relation to the settlement," *i.e.*, whether the fee represents a fair percentage of the settlement achieved. *Goldberger*, 209 F.3d at 50. As set out above, the 33⅓% fee requested here is commonly awarded in this Circuit and others throughout the rest of the country in similar circumstances. Given the significant risks at stake in succeeding on the motion to dismiss, a likely motion for summary judgment, or at trial and ultimately collecting on a judgment, 33⅓% of the Settlement is reasonable.

### 6. Public Policy Considerations Fully Support the Fee Requested

The sixth factor that should be considered in determining the fee awarded to plaintiffs' counsel in class actions is "public policy considerations." *Goldberger*, 209 F.3d at 50. The Supreme Court has recognized that a private cause of action, which is available for a violation of §10(b) and Rule 10b-5, "constitutes an essential tool for enforcement" of the Exchange Act. *Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) (citation omitted). The Court has further "emphasized that implied private actions provide a most effective weapon in the enforcement of the securities laws and are a necessary supplement to Commission action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citations and internal quotations omitted).

---

[10] The quality of opposing counsel is also an important consideration in evaluating the quality of Lead Counsel's work. *See Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *83; *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *20 ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel.") (citation omitted). Indeed, counsel for Defendants, Gibson, Dunn & Crutcher, LLP, is a leader among national litigation law firms with a noted expertise in securities litigation.

Encouraging the enforcement of securities laws, Second Circuit Courts have held that "public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *83-84 (quoting *In re Merrill Lynch Tyco Research Secs. Litig.*, 249 F.R.D. 124, 141-42 (S.D.N.Y. 2008)) (internal quotations and brackets omitted). Specifically, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005). "The significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *50. In addition, the typical class representative is unlikely to be able to pursue long and protracted litigation at their own expense. Thus, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them." *Id.* at *51-52. By awarding, "[r]easonable and adequate compensation for such services where successful results are achieved," courts ensure the prosecution of meritorious cases.

Co-Lead Counsel pursued claims against Defendants in an attempt to redress the losses they allege Defendants caused Class Members as a result of challenged omissions and misstatements. This private enforcement of the federal securities laws is a necessary adjunct to government intervention.

Moreover, "'courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.'" *Clem v. KeyBank, N.A.*, No. 13 Civ. 789 (JCF), 2014 U.S. Dist. LEXIS 87174, at *12 (S.D.N.Y. June 20, 2014) (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 U.S. Dist. LEXIS 144327, at *14 (S.D.N.Y. Oct. 2, 2013)). Thus,

public policy favors compensating Co-Lead Counsel for their commitment of time and expenses in pursuing the Action.

### C.   To Date, No Class Members Have Objected to the Requested Fee

On October 24, 2014, the Notice Packet was mailed to approximately 12,000 persons and entities on a record holder mailing list.  Campisi Decl. ¶ 8.  On November 5, 2014, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PRNewswire*.  *Id*. ¶ 12. The time for filing objections to the Settlement, Plan of Allocation or application for attorneys' fees and expenses expires on January 2, 2015.  Campisi Decl. ¶ 97.  The Notice described the Settlement and notified Class members of Co-Lead Counsel's intention to apply for attorneys' fees of up to 33⅓% of the Settlement Fund and for reimbursement of expenses that were advanced by Co-Lead Counsel through December 2014 in connection with the Litigation.  Members of the Class, which include sophisticated institutional investors, were informed that they could object to the amount of attorneys' fees or expenses requested.  *See* Notice, ¶¶ 18-22.

 "[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."  *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *85 (citing *Maley*, 186 F. Supp. 2d at 374 ("The reaction by members of the Class is entitled to great weight by the Court.")); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence" of the reasonableness of the fee request); *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 912 F. Supp. 97, 103 (S.D.N.Y. 1996) (court determined that an "isolated expression of opinion" should be considered "in the context of thousands of class members who have not expressed themselves similarly"), *aff'd, Toland v. Prudential Sec. P'ship Litig*., 107 F.3d 3 (2d Cir. 1996); *see also Telik*, 576 F. Supp. 2d 570, 594 ("That only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable.") (citations omitted).

Co-Lead Counsel, therefore, submits that the lack of objections here indicates support for the fee request.  Plaintiffs anticipate filing a reply after the deadline for submissions of objections (January 2, 2015) and will update the Court as to the receipt of, as well as respond to, any objections at that time.

## III.   THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702 at *86 (citing *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *17; *Am. Bank*, 127 F. Supp. 2d at 430).  "'Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.'" *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *57 (quoting *In re Arakis Energy Corp., Sec. Litig*., No. 95 CV 3431 (ARR), 2001 U.S. Dist. LEXIS 19873, at *57 n. 12 (E.D.N.Y. Aug. 17, 2001)).  Courts have awarded such expenses so long as counsel's documentation of them is "adequate."  *In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465, 489 (S.D.N.Y. 1998).

Co-Lead Counsel have expended in total $91,357.40 in unreimbursed expenses reasonably incurred in connection with prosecution of the Action.  Campisi Decl. ¶ 120.  These expenses are of the type that law firms typically bill to their clients and include such things as:  mediator fees, expert fees, computer research, photocopying, postage, travel, meals, and court filing fees.  Co-Lead Counsel expended $31,885 for their damage expert and Plan of Allocation.  Co-Lead Counsel also expended $18,223 in mediator fees.  *Id.* ¶ 123. All of these expenses are customary and necessary expenses for complex securities actions, and were necessary for Co-Lead counsel to successfully prosecute this case.  *See, e.g., Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *87 ("These expenses are of the type that law firms typically bill to their clients, including photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for

20

foreign counsel, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, travel, and other expenses directly related to the prosecution of this Action.").  Finally, as noted above, to date, no objections have been submitted with respect to expenses.  Therefore, Co-Lead Counsel respectfully requests reimbursement of expenses in the amount of $91,357.40.

## IV.   LEAD PLAINTIFF'S REQUEST FOR AN AWARD OF REASONABLE COSTS AND EXPENSES

The PSLRA, in pertinent part, provides that "reasonable costs and expenses (including lost wages)" incurred to due to representation of a class may be paid to any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4); *see Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at **60-61 ("'Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.'") (quoting *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at * 10 (S.D.N.Y. Oct. 24, 2005)).

As discussed more fully in the Declaration of Craig F. Piazza, dated December 23, 2014 ("Piazza Decl."), Lead Plaintiff has been actively overseeing this Litigation, and has incurred lost business opportunities and time away from his business in order to fulfill his fiduciary duties to the Class.[11]  *See* Piazza Decl., attached as Exhibit 13 to the Campisi Declaration.  These are precisely the types of costs for which Lead Plaintiff may be reimbursed under the PSLRA.  *Marsh*

---

[11] Among other things, Lead Plaintiff has extensively reviewed and approved the pleadings filed in this Action; extensively communicated with Co-Lead Counsel regarding strategy and developments in the case; reviewed and commented on Co-Lead Counsel's submissions to the Court and the mediators; discussed the retention of experts and consultants; and consulted with Co-Lead Counsel in connection with the mediations and settlement discussions on behalf of the Class.  Piazza Decl., Exhibit 13 to the Campisi Declaration.

& *McLennan*, 2009 U.S. Dist. LEXIS 120953, at \*61; *see also Varljen v. H.J. Meyers & Co.*, 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at \*14 n.2 (S.D.N.Y. Nov. 8, 2000) (approving award to plaintiffs "as it encourages participation of plaintiffs in the active supervision of their counsel.").

The Notice apprised Class Members that Lead Plaintiff would seek reimbursement of reasonable costs and expenses of not to exceed $10,000.00.  To date, no Class member has objected to this request.   Accordingly, Lead Plaintiff respectfully requests an award of $8,500, as reimbursement for lost business and business opportunities due to his representation of the Class.

**CONCLUSION**

For all of the reasons set forth above, Co-Lead Counsel should be awarded attorneys' fees in the amount of 33⅓% of the Settlement Fund, or $1,998,133.50, reimbursement of expenses in the amount of $91,357.40, and Lead Plaintiff should be awarded reasonable costs and expenses of $8,500.

New York, New York
Dated: December 24, 2014

Respectfully submitted,

By:_____/s/  Jeffrey P. Campisi_____

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan (rkaplan@kaplanfox.com)
Frederic S. Fox (ffox@kaplanfox.com)
Jeffrey P. Campisi (jcampisi@kaplanfox.com)
850 Third Avenue, 14th Floor
New York, New York 10022

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
(sdr@rigrodskylong.com)
Timothy J. MacFall
(tjm@rigrodskylong.com)
825 East Gate Boulevard; Suite 200
Garden City, New York 11530

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will electronically send notification of such filing to all counsel of record.

Executed on December 24, 2014 in New York, New York.

<u>        /s/ Jeffrey P. Campisi        </u>
JEFFREY P. CAMPISI